UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRANSAMERICAN LIFE INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>LEANNE ERDELBROCK and NANCY CHANDLER,<br><br>               Defendants. | CASE NO. 12-5863BHS<br><br>ORDER DENYING DEFENDANT ERDELBROCK'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT CHANDLER'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Leanne Erdelbrock's ("Ms. Erdelbrock") motion for summary judgment (Dkt. 43) and Nancy Chandler's ("Ms. Chandler") motion for summary judgment (Dkt. 45). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies Ms. Erdelbrock's motion and grants in part and denies in part Ms. Chandler's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On September 26, 2012, Plaintiff Transamerica Life Insurance Company ("Transamerica") filed this action in interpleader to deposit the funds of a life insurance

ORDER - 1

1  policy with the Court. Dkt. 1. On January 31, 2013, the Court granted Transamerica

2  judgment in interpleader and dismissed the company from the proceeding. Dkt. 27.

3        On June 20, 2013, the parties disputing the proceeds, Ms. Erdelbrock and Ms.

4  Chandler, filed cross motions for summary judgment. Dkts. 43 & 45. On July 8, 2013,

5  both parties responded. Dkts. 47 & 48. On July 12, 2013, both parties replied. Dkts. 49

6  & 50.

7  ## II. FACTUAL BACKGROUND

8        On September 27, 1997, Lance Chandler ("Mr. Chandler") and Ms. Chandler

9  married. The couple shortly thereafter had twin girls, born on December 23, 1997. On

10  March 24, 2005, the marriage between Ms. Chandler and Lance was dissolved by a

11  Judgment of Dissolution entered by the Clerk of the Superior Court of California, County

12  of San Diego.

13        The Chandlers included as part of the Judgment of Dissolution a Marital

14  Settlement Agreement, effective as of October 1, 2003. Dkt. 44, Exh. 2. Pursuant to this

15  agreement, Mr. Chandler agreed to maintain a life insurance policy as follows:

16          As additional child support, and as security for future child support,
    [Mr. Chandler] shall maintain in full force and effect, $3,000,000 of life
17      insurance on his life and shall name either the minor children as equal
    beneficiaries of the insurance or [Ms. Chandler] as the sole beneficiary of
18      the insurance or an irrevocable life insurance trust established for the
    benefit of the minor children or [Ms. Chandler].
19  *Id.* § 15(A).

20        On December 29, 2003, Lance submitted an application for life insurance to

21  Transamerica. On April 21, 2004, Transamerica rejected the policy. That same day,

22

Lance submitted a new application requesting a policy for $3,000,000. Dkt. 44, Exh. 3 at 3. The application for a 10-year level term policy was approved, and Lance paid the initial premium of $2,700 with a check from his personal bank account.

Sometime after the dissolution, Mr. Chandler began living with Ms. Erdelbrock. She declares that she paid the policy premium for the 2006 year and that checks from a joint bank account with Mr. Chandler were used to pay the premiums for the years 2007–2010 and 2012. Dkt. 44, Exh. 4.

Mr. Chandler purchased a property from Ms. Erdelbrock's father, which was located at 800 Luebke Road, Toutle, Washington ("Toutle Property"). Mr. Chandler kept the property as his separate property, and on May 9, 2008, he borrowed $1,003,052.09 from First Independent Bank using the property as security for the loan. Dkt. 47–1. On May 14, 2008, the deed of trust was publically recorded. *Id*. Ms. Erdelbrock declares that she was unaware of this encumbrance until many years later. Dkt. 44–4, ¶ 13.

In June 2008, Mr. Chandler and Ms. Erdelbrock married. Prior to the marriage, they entered into a prenuptial agreement. Dkt. 44, Exh. 1 ("Prenuptial Agreement"). In that agreement, they announced their

> desire that all property owned by either of them at the time of their marriage, and all property which comes to either of them, from any source during their marriage, except as otherwise provided herein, shall be the Separate Property of the person owing or receiving that property.

*Id*., Recital C. The parties also agreed as follows:

> In the event the Separate Property assets of either party or any joint or community property of the parties is invested in the separate property of one spouse subsequent to its initial acquisition, such investment shall be deemed to be a loan to such spouse to be repaid within a reasonable time at

ORDER - 3

a reasonable rate of interest, unless the parties otherwise agree in writing. The loan shall be secured by the property benefited. Such loan shall not entitle the lending party (or parties jointly), or the marital community, as the case may be, to a proportion of any increase in the value of the property or to an. ownership interest of any kind in such property . . . .

*Id*., § 14.  Mr. Chandler agreed to procure a life insurance policy as follows:

> Prospective Husband shall procure life insurance with Prospective Wife as sole beneficiary. The payoff value of the policy shall be a minimum of two million dollars payable to Prospective Wife in the event of husband's death with the expectation that it will provide funds for any remaining mortgage and additional monies for Prospective Wife's benefit.

*Id*., § 13.  In the list of Mr. Chandler's separate property, he lists the Toutle Property, but does not disclose that it was encumbered with a loan over a million dollars. *Id*., Schedule A.  Mr. Chandler, however, agreed to give Ms. Erdelbrock 50% of the value of the Toutle Property in the event of dissolution and 100% of its value in the event of Mr. Chandler's death. *Id*., ¶¶ 13, 28(a).

On May 31, 2012, Mr. Chandler passed away.  Both Ms. Chandler and Ms. Erdelbrock filed a claim with Transamerica for the proceeds of the life insurance policy, and this action followed.

### III. DISCUSSION

The first issues before the Court are the validity and effect of the Prenuptial Agreement.  The Court concludes that questions of fact exist on the enforceability of the agreement.  However, if the agreement is enforceable, the policy was Mr. Chandler's separate property and the agreement is not trumped by default community property laws.

Finally, regardless of the enforceability of the agreement, Ms. Chandler is at least entitled to one-half of the proceeds of the policy.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Prenuptial Agreement**

There exist two issues with the Prenuptial Agreement: (1) whether it is enforceable and (2) whether, pursuant to its terms, the Transamerica policy was Mr. Chandler's separate property.

**1.     Enforceability**

When evaluating the validity of a prenuptial agreement, the court must first decide "whether the agreement provides a fair and reasonable provision for the party not seeking enforcement of the agreement. If the court makes this finding, then the analysis ends and the agreement may be validated." *In re Marriage of Matson*, 107 Wn.2d 479, 482 (1986). If the court does not make this finding, then it should advance to the second prong of the analysis, which combines two tests:

> (1) whether full disclosure has been made by [the parties] of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by [both spouses of their] rights.

1  *Id*. at 483 (quoting *Whitney v. Seattle-First National Bank*, 90 Wn.2d 105, 110 (1978)).

2  "The validity of prenuptial agreements in [Washington] is based on the circumstances

3  surrounding the execution of the agreement."  *In re Marriage of Zier*, 136 Wn. App. 40,

4  47 (2006) (citing Matson, 107 Wn.2d at 484).

5          **a.**      **Substantive Fairness**

6       In this case, the parties dispute whether the Prenuptial Agreement provides a fair

7  and reasonable provision for Ms. Erdelbrock.  The parties concentrate on three cases in

8  arguing their prospective positions: (1) *In re Estate of Crawford*, 107 Wn. 2d 493, 495-96

9  (1986) (prenuptial agreement invalid where no provision was made for wife in the event

10 of divorce or death of husband and severely restricted the ability to accumulate

11 community property); *Matson*, 107 Wn. 2d at 486 (prenuptial agreement served "to deny

12 [the wife] any of her common law and statutory rights for a just and equitable distribution

13 of property."); *In re Marriage of Foran*, 67 Wn. App. 242, 249–50 (1992) (prenuptial

14 agreement invalid where wife worked for husband's separate property business for nine

15 years during marriage but wife was never compensated).  Ms. Erdelbrock provides

16 numerous unpersuasive arguments under these authorities.

17      First, she asserts that the significant difference in the amount of separate property

18 the parties listed when they entered the marriage makes the agreement fundamentally

19 unfair.  This proposition, however, would be an unworkable rule and completely

20 misapplies *Matson*.  In *Matson*, the challenged agreement allowed the husband to devote

21 a significant amount of his time during the marriage to increase his separate property and

22 failed to provide for the wife upon dissolution or death. 107 Wn. 2d at 486.  Unlike the

husband in *Matson*, Mr. Chandler devoted his only income to the community, assigned rights for the acquisition of the community home upon dissolution or death, and agreed to secure a life insurance policy for the sole benefit of Ms. Erdelbrock. In light of these concessions and efforts to grow the community property, the disparity of the parties' initial separate property is of no moment.

Second, Ms. Erdelbrock contends that it is "fundamentally unfair" for Ms. Erdelbrock to commit all her earnings to the community while Mr. Chandler only committed his main salary of $150,000. Dkt. 47 at 10 (citing *In re Marriage of Foran*, 67 Wn. App. at 249-50). There is no such rule of "fundamental unfairness." Moreover, the court in *Foran* was concerned with the provision of the contract in which the wife waived any right to a lien against the husband's separate property even though she worked for his separate business for years without compensation. *Id*. The *Foran* court found that the agreement "effectively . . . foreclose[d] the accumulation of any significant community estate." *Id*. Unlike *Foran*, the agreement before the Court did not effectively foreclose the accumulation of Mr. Chandler and Ms. Erdelbrock's community estate.

Third, Ms. Erdelbrock continually mentions that Mr. Chandler failed to secure a life insurance policy solely for her benefit as agreed to in the Prenuptial Agreement. Although unfortunate, this fact is of no moment in this case because Ms. Erdelbrock's remedy is a suit for breach of contract against Mr. Chandler's estate. *See DewBerry v. George*, 115 Wn. App. 351, 364 (2003) (citing *In re Marriage of Burke*, 96 Wn. App. 474, 477 (1999)).

1  Finally, though these arguments are unpersuasive, there yet remains a question of
2  fact as to whether the Prenuptial Agreement was substantively unfair because the Toutle
3  Property interest that was transferred to Ms. Erdelbrock was severely encumbered. Since
4  this transfer of interest was a significant factor in Ms. Chandler's argument that the
5  Prenuptial Agreement was substantively fair, the fact that it had little net value at the time
6  of the transfer leaves open the triable question of whether overall the Prenuptial
7  Agreement included a fair and reasonable provision for Ms. Erdelbrock.  Therefore, the
8  Court denies both parties' motions for summary judgment on this issue because material
9  questions of fact exist on the issue of substantive unfairness.

10  **b.    Procedural Unfairness**

11  A prenuptial agreement is upheld as a whole if it is determined to be procedurally
12  fair even if it is not substantially fair. *Matson*, 107 Wn.2d at 482.
13  In this case, the same issues of fact regarding whether the agreement was
14  substantially unfair exist on the issue of whether the agreement was procedurally unfair.
15  First, there is a factual dispute whether Mr. Chandler fully disclosed the recent
16  encumbrance on the Toutle Property.  Second, taken in the light most favorable to Ms.
17  Erdelbrock, the timing of the encumbrance and signing of the agreement create material
18  questions of fact whether she entered into the agreement fully and voluntarily and with
19  full knowledge of her rights.  Therefore, the Court denies both parties' motions for
20  summary judgment on this issue because material questions of fact exist on the issue of
21  procedural unfairness.
22

### 2.     Separate Property

If the Prenuptial Agreement is enforceable, the next issue before the Court is whether the life insurance policy was Mr. Chandler's separate property pursuant to the agreement.  It is undisputed that Mr. Chandler failed to include the policy in his list of separate property that was attached to the agreement.  *See* Prenuptial Agreement, Exh. A.  This failure is not fatal, however, because the Prenuptial Agreement contained a general separate property provision and Ms. Erdelbrock was aware of the policy before entering into the agreement.  Section 6 of the Prenuptial Agreement not only states that Mr. Chandler's list of property is non-exclusive, but also states that all property owned whatsoever before entering the marriage is his separate property.  Therefore, the Court finds that the life insurance policy was Mr. Chandler's separate property if there is an enforceable Prenuptial Agreement.

### C.     Risk Payment Doctrine

In Washington, "the character of funds used to pay for the most recent term should determine the character of a term life insurance policy." *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 659 (1984).

In this case, the parties dispute the application of what is commonly referred to as the risk payment doctrine.  Ms. Erdelbrock argues that the character of the life insurance policy changed from separate property to community property because the most recent payments on the policy were made from community assets.  Dkt. 43 at 15–17.  On the other hand, Ms. Chandler contends that an enforcable Prenuptial Agreement trumps the

risk payment doctrine. Dkt. 50 at 6–7. While Ms. Chandler fails to cite case law directly on point, the Washington legislature has provided that

> [n]othing contained . . . in any law of this state, shall prevent both spouses or both domestic partners from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either.

RCW 26.16.120. Pursuant to this statute, it seems that, with limited exception for fraud or other equitable means, the court made risk payment doctrine shall not prevent Mr. Chandler and Ms. Erdelbrock from entering an agreement regarding the disposition of community property. Therefore, if the Prenuptial Agreement is enforceable and the policy became community property, Mr. Chandler and Ms. Erdelbrock contracted to consider the policy premiums a loan to Mr. Chandler's separate property. *See* Prenuptial Agreement § 14. That provision also provides that the community is entitled to repayment of the loan with reasonable interest from the proceeds of the policy. *Id.*

**D.    Preliminary Distribution**

Ms. Chandler contends that, if the Court concludes that questions of fact exist as to the enforceability of the Prenuptial Agreement, Ms. Chandler is currently entitled to at least half of the proceeds. Dkt. 45 at 22–23. This argument is based on the rule of community property that a spouse is entitled to distribute his or her half of the community assets however he or she may desire. *See Porter v. Porter*, 10 Wn.2d 43, 51 (1986); *Francis v. Francis*, 89 Wn.2d 511, 515 (1978). Without any legal authority, Ms. Erdelbrock disagrees and claims that she is entitled to two-thirds of the proceeds. Dkt. 43 at 22. The Court declines to accepts Ms. Erdelbrock's unsupported position. Therefore,

the Court grants Ms. Chandler's motion on the issue of a preliminary distribution of half of the assets in the Court's registry.

**E.    Attorney's Fees**

Ms. Chandler asserts that, under any plausible legal theory, she was entitled to at least half of the proceeds of the policy and requests that the Court award her attorney's fees because opposing counsel failed to agree to an early disbursement of half of the proceeds.  Dkt. 45 at 22–23.  Ms. Chandler bases her request on Ms. Erdelbrock acting in bad faith or vexatiously.  Dkt. 50 at 9.  The Court is unable to reach that conclusion.  Therefore, the Court denies an award of fees at this time.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Ms. Erdelbrock's motion for summary judgment (Dkt. 43) is **DENIED** and Ms. Chandler's motion for summary judgment (Dkt. 45) is **GRANTED in part** and **DENIED in part**.  The Clerk is directed to disburse half of the proceeds in the Court's registry to Ms. Chandler.

Dated this 3rd day of September, 2013.

BENJAMIN H. SETTLE
United States District Judge